***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Royal Sunalliance Insurance Company is the carrier on risk.
4. Plaintiff's average weekly wage yielded a compensation rate of $376.02.
5. The Form 33 was stipulated into evidence as Stipulated Exhibit 1.
6. Correspondence to Robin Terry from Kenneth W. King, Jr. was stipulated into evidence as Stipulated Exhibit 2.
7. A Mediated Settlement Agreement was stipulated into evidence as Stipulated Exhibit
8. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 4.
9. An Agreement of Final Settlement and Release was signed by all parties and submitted to the North Carolina Industrial Commission. Special Deputy Commissioner Ronnie Rowell approved the settlement agreement on June 25, 1998. This was stipulated into evidence as Stipulated Exhibit 5.
10. The issues before the Full Commission are: (i) whether there was error due to fraud, misrepresentation, undue influence or mutual mistake such that the North Carolina Industrial Commission set aside their approval of the Agreement of Final Settlement and Release; and (ii) whether plaintiff suffered a change of condition or other legally sufficient cause?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Allan H. Friedman, M.D., James W. Markworth, M.D., Kenneth W. King and Robin H. Terry are OVERRULED.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident on July 28, 1993 sustaining injuries to his neck and back when he was struck by a pipe. Defendants accepted this as a compensable injury and paid plaintiff's compensation at a rate of $376.02 per week.
2. Plaintiff was treated by James Markworth, M.D., for a multilevel fusion in May 1996. The goal of the fusion surgery was to obtain a bony union and to relieve plaintiff's neck pain. Plaintiff also underwent surgery to his shoulder which is not an issue in this claim.
3. On October 20, 1997, Dr. Markworth reviewed plaintiffs x-rays and determined the films showed a line at the inferior margin at C3-4 graft and C5-6 graft, and maybe at C6-7 but there was no motion with flexion/extension. Dr. Markworth said the areas appeared to be remodeling nicely, but the status of the grafts could not be determined from the MRI scan.
4. Mr. Roberts continued to treat at Southeastern Orthopaedic Clinic with Dr. Mark — worth's physician assistant, Annondo Gonzalez.
5. Physician Assistant Gonzalez indicated plaintiff had reached maximum medical improvement on December 15, 1997.
6. On February 17, 1998, Dr. Markworth determined plaintiff had a thirty (30%) percent permanent partial disability to his back based on the four level cervical fusion and residual pain. Dr. Markworth did not see plaintiff at that point and related the finding of maximum medical improvement back to the December 15, 1997 visit in which plaintiff was only seen by Dr. Markworth's physician assistant, Armondo Gonzalez.
7. Plaintiff was not seen again by Dr. Markworth's office until April 1. 1998. At that time, plaintiff was seen by Physician Assistant Gonzalez who again indicated the fusion was still in good position after reviewing x-rays taken during that visit. Plaintiff was still having pain but was denied any pain medication or sleeping pills.
8. Dr. Markworth testified in his September 26, 2000 deposition, and the Full Commission finds as fact, that plaintiff's fusion had not remodeled into a bony fusion, which was the goal of the surgery, and as a result plaintiff was not at maximum medical improvement. Dr. Markworth went on to say that plaintiff could see improvement with further surgery and had he reviewed the x-ray on April 1, 1999 he would have discussed further surgery with plaintiff.
9. Dr. Markworth testified again in a November 7, 2000 deposition in which he stated that the goal of surgery was to reduce the pain and get it under control. Plaintiff was still having pain when last seen by Dr. Markworth's office. He went on to say that bony union was a secondary goal of the initial surgery and that bony unions are sometimes associated with reduction of the pain.
10. The x-rays taken in April 1998, six months after Dr. Markworth or Southeastern Orthopaedic Clinic had last treated plaintiff, indicated Dr. Markworth's diagnosis of maximum medical improvement on April 1, 1998 was a mistake. Dr. Marlworth testified, and the Full Commission finds as fact, that advising plaintiff that he was at maximum medical improvement at that time was a mistake.
11. Plaintiff was previously represented by Kenneth King and defendants were represented by Robin Terry. Based on the mistaken diagnosis of plaintiff having attained maximum medical improvement and having been rated for the neck and shoulder, the parties went to mediation on May 13, 1998. This negotiation was fruitful and resulted in a settlement amount of $125,000.00 plus payment of related medical expenses. At the time of the mediation, plaintiff's ratings were worth $42.866.28. All other indemnity had been paid up to date relating to the claim.
12. Depositions were taken of Kenneth King and Robin Tem. Mr. King testified that he was not aware of any mistake by Dr. Markworth's office regarding plaintiff being at maximum medical improvement at the time the clincher was signed. Mr. King testified further that based on his experience, a finding of maximum medical improvement and being given an impairment rating are material factors to consider when advising a client whether or not to settle a case.
13. The Full Commission finds as fact, based on reasonable inference drawn from the evidence before it, that the finding of maximum medical improvement and the impairment rating given by Dr. Markworth were material to the settlement of this claim and that both parties relied on this information in entering into settlement negotiations.
14. Plaintiff testified, and the Full Commission finds as fact, that being told he was at maximum medical improvement was material to his decision to settle his case and that he would not have settled his case had he known there was a non-union of his cervical spine and that he was not at maximum medical improvement.
15. On April 3. 1998, plaintiff had requested a second opinion from Alan Friedman, M.D. During mediation, the parties agreed to plaintiff getting the second opinion.
16. Dr. Friedman saw plaintiff on June 2, 1998. This appointment was eight days prior to the signing of the settlement agreement. Plaintiff did not provide Dr. Friedman with his past medical records. Dr. Friedman reviewed x-rays from October but was not certain as to the date of the x-rays. Dr. Friedman indicated in his June 2, 1998 note there was question of lucency below the graft at C5-6. Dr. Friedman indicated x-rays needed to be repeated and to be sure the fusion was stable. Dr. Friedman indicated his concern to plaintiff that current x-rays needed to be obtained to be sure the fusion was solid or not, however, the carrier would not authorize the taking of new x-rays. Dr. Friedman testified, and the Full Commission finds as fact, that plaintiff was not at maximum medical improvement with regard to his cervical spine when he examined plaintiff on June 2 1998.
17. In April 1999, Dr. Friehnan performed a sub muscular transposition of plaintiff's left ulnar nerve to relieve plaintiff's pain. Dr. Richardson performed a posterior fusion on Plaintiffs neck at C3 through C6 in June 1998, which improved plaintiff's problems with neck pain,
18. Plaintiff has incurred post-clincher medical expenses that are directly related to his July 28, 1993 injury by accident to his shoulder and neck which have not been paid by defendants.
19. There is no claim for undue influence in this matter.
20. The greater weight of the evidence indicates there was a mutual mistake with regard to plaintiffs medical condition at the time of the signing of the settlement agreement.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for the Industrial Commission to set aside the Compromise Settlement or Clincher Agreement which is the subject of this claim, plaintiff has the burden of showing that the Settlement Agreement was entered into and approved under circumstances of fraud, misrepresentation, undue influence or mutual mistake of fact and plaintiff has met that burden. The compromise settlement agreement should be set aside and declared null and void based on the mutual mistake of fact that led to the settlement negotiations and ultimate settlement of this claim. N.C. Gen. Stat. § 97-17.
2. Dr. Markworth's error in diagnosis was a mistake of fact that existed prior to the approval of the compromise settlement agreement and was not known to the parties. "A mistake of fact takes place when some material fact which really exists is unknown, or some essential fact is supposed to exist which really does not exist." Freeman v. Croom,172 N.C. 524, 90 S.E. 523; 1916). In this case a bony union at the site of plaintiff's fusion was said to exist which led to a finding of maximum medical improvement, both of which were admittedly errors in diagnosis. Both of these findings were material facts that were relied on by the parties to negotiate the settlement in this case.
3. Plaintiff is entitled to temporary total disability compensation from the date on which payments were terminated, June 28, 1999, until plaintiff is determined to be at maximum medical improvement or until further order of the commission. Defendants are entitled to a credit of the $125,000.00 settlement against disability compensation of $376.02 per week from June 28, 1999, the date of approval of the Compromise Settlement agreement. The $125,000 credit is sufficient to obviate the requirement of payment of weekly compensation for 6.4 years, or through December of 2004.
4. Plaintiff is entitled to payment for all medical expenses, including those incurred following the settlement agreement that is the subject of this appeal, related to plaintiff s compensable injury which are designed to effect a cure, give relief or lessen the period of plaintiff s disability to include the surgery to remove the screw that backed out of the spinal cage. N.C. Gen. Stat. § 97-25.
5. Plaintiff's prior attorney is entitled to keep the $31,250.00 attorney fee previously awarded. Plaintiff's present attorney is entitled to receive every fourth check due plaintiff from and after December 31, 2004.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation of $376.02 from June. 28, 1999 and continuing until further order of the Commission, subject to an offset for $125,000.00 already paid to plaintiff or to plaintiff's prior attorney by Defendants. This offset is sufficient to cover compensation payments due plaintiff through December 31, 2004. Thereafter, defendants shall pay plaintiff $376.02 weekly until further order of the Industrial Commission, with every fourth check paid directly to plaintiff's current counsel of record as attorney fees.
2. Defendants shall pay for all medical expenses, including those incurred following the settlement agreement that is the subject of this appeal, related to plaintiff's compensable injury that are designed to effect a cure, give relief or lessen the period of plaintiff's disability to include the surgery to remove the screw that backed out of the spinal cage.
3. As plaintiff is not at maximum medical improvement, plaintiff's entitlement to compensation for permanent disability is reserved for a future date.
Defendants shall pay the costs.
This 9th day of May 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER